IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL POMERANTZ, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> INTERNATIONAL HOTEL ) <br> COMPANY, LLC d/b/a PALACE ) <br> PREMIER and PALACE ELITE, a ) <br> Florida limited liability company, HARD ) <br> ROCK CAFÉ FRANCHISE GROUP, ) <br> LLC, a Florida limited liability company, ) <br> and HARD ROCK CAFÉ ) <br> INTERNATIONAL (USA), INC., a ) <br> Florida Corporation, ) <br> ) <br> Defendants. ) | No. 18 C 5470 <br><br> Magistrate Judge Sidney I. Schenkier |

## MEMORANDUM OPINION AND ORDER[1]

On March 27, 2018, plaintiff Michael Pomerantz filed suit in state court against defendants Hard Rock Café Franchise Group, LLC ("Hard Rock Franchise") and Hard Rock Café International (USA), Inc. ("Hard Rock International") (collectively, "Hard Rock defendants") and International Hotel Company, LLC, d/b/a Palace Premier and Palace Elite ("IHC"), alleging breach of contract, common law fraud, consumer fraud and civil conspiracy (doc. # 1: Not. of Removal, Ex. 1). On August 10, 2018, defendant IHC removed the case to federal court based on diversity jurisdiction (*Id.*), and on September 4, 2018, plaintiff filed an amended complaint ("Complaint") in federal court (doc. # 17: Compl.). On September 25, 2018, the Hard Rock defendants and IHC filed separate motions to dismiss. IHC has moved for dismissal under Federal Rules of Civil Procedure 12(b)(1), (3) and (6) (doc. # 25), and the Hard Rock defendants have moved to dismiss

---

[1] On October 2, 2018, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to this Court for all proceedings, including entry of final judgment (doc. # 33).

under Federal Rules of Civil Procedure 9(b), 12(b)(2) and 12(b)(6) (doc. # 23). Both motions are now fully briefed. For the reasons set forth below, the Court grants IHC's motion to dismiss based on *forum non conveniens* and grants the Hard Rock defendants' motion to dismiss for failure to state a claim upon which relief can be granted.

## I.

We first set out the well-pleaded factual allegations in the Complaint. We accept these allegations as true for purposes of defendants' motions to dismiss under Rules 12(b)(1) (lack of subject-matter jurisdiction), 12(b)(2) (lack of personal jurisdiction), 12(b)(3) (improper venue), 12(b)(6) (failure to state a claim), and 9(b) (failure to plead fraud with particularity). *See, e.g., Bultasa Buddhist Temple of Chicago v. Nielsen*, 878 F.3d 570, 573 (7th Cir. 2017) (Rule 12(b)(1)); *Felland v. Clifton*, 682 F.3d 665, 676 (7th Cir. 2012) (Rule 12(b)(2)); *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 806 (7th Cir. 2011) (Rule 12(b)(3)); *Tucker v. City of Chicago*, 907 F.3d 487, 491 (7th Cir. 2018) (Rule 12(b)(6)); *Webb v. Frawley*, 906 F.3d 569, 576 (7th Cir. 2018) (Rule 9(b)). Documents attached to the complaint and motions to dismiss "are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018) (internal citations and quotations omitted). In addition, when considering motions to dismiss based on improper venue or *forum non conveniens*, the Court considers whether defendant's affidavits contradict the allegations in the plaintiff's complaint as to the appropriate venue or forum. *See Deb v. SIRVA, Inc.*, 832 F.3d 800, 809-10 (7th Cir. 2016).

### A.

Mr. Pomerantz is a resident of Illinois (Compl., ¶ 2). He alleges, "based on information and belief," that IHC "does business as Palace Premier and Palace Elite" (*Id.*, ¶ 6). Further, plaintiff

alleges that IHC and the Hard Rock defendants are Florida companies that do business in Illinois (*Id.*, ¶¶ 3-5). The Hard Rock defendants submitted an affidavit from one of their directors stating that Hard Rock Franchise is not registered or licensed to do business in Illinois (Hard Rock Defs.' Mot. to Dismiss, Ex. 1: Affidavit of Brian Alexander, ¶ 5). Plaintiff asserts venue is proper in this Court "because a substantial part of the events or omissions giving rise to the claim occurred in this district" (Compl., ¶ 8).

**B.**

On March 6, 2009, plaintiff signed a "Membership Agreement" with Palace Premier, S.A. de C.V. ("Palace Premier") (Compl., Ex. A: "Agreement"). Mr. Pomerantz paid a "Membership Fee" to Palace Premier in return for a 25-year membership entitling him to stay at fourteen Mexican resorts, which plaintiff collectively refers to as the "Original Palace Resorts" (Compl., ¶ 10; Agreement, ¶¶ 1-2, 6). Mr. Pomerantz paid "VIP preferential rates" to obtain additional resort benefits as a "VIP Founding Member" (*Id.*, ¶ 11; Agreement, attachments). The Agreement contains a clause stating: "Jurisdiction -- The parties agree to submit to the jurisdiction of the courts and tribunals of the City of Cancun, Quintana Roo in the event of any controversy over the interpretation or execution of this Agreement, . . . thereby renouncing any other jurisdiction that may correspond to them by reason of present or future domicile" (Agreement, ¶ 10). The Agreement also contains a clause stating: "Applicable Law -- This agreement and the documents it comprises as well as the parties thereto will be subject to the Federal Consumer Protection Act and to the Official Mexican Standard (NOM-029-SCFI-1998) published in the Federal Gazette on January 29, 1999" (*Id.*, ¶ 9). Mr. Pomerantz and a representative of Palace Premier signed each page of the Agreement and the documents attached to the Agreement.

## C.

Plaintiff alleges that, "upon information and belief, in or around 2012, IHC entered into an agreement whereby a number of the Original Palace resorts would be "rebranded" as 'Hard Rock Hotels,' and managed in conjunction with" the Hard Rock defendants (Compl., ¶ 12). Plaintiff alleges that the hotels that were re-branded as Hard Rock hotels have "failed to honor many of the membership rights of VIP founding members and Premier Level members," including plaintiff (*Id.*, ¶¶ 13-16). In addition, plaintiff alleges the rebranded hotels have increased their "preferential rates" more than the maximum amount listed in the Agreement, and plaintiff "was informed that there would be additional charges for numerous benefits and services that Plaintiff had already paid for as a VIP founding member and Premier Level member" (*Id.*, ¶¶ 17-18). The Hard Rock defendants assert that neither of them is a franchisor or licensor of IHC (Alexander Aff., ¶ 6).

Plaintiff contends that the Membership Agreement constitutes a valid and enforceable contract between him and IHC, and that IHC breached the Agreement when the rebranded hotels refused to honor its terms (Compl., ¶¶ 20-22). In addition, plaintiff alleges that IHC committed common law fraud and violated the Illinois Consumer Fraud and Deceptive Business Practices Act by making false and deceptive statements, in reliance upon which plaintiff entered into the Agreement (*Id.*, ¶¶ 25-39). Lastly, plaintiff contends that IHC and Hard Rock committed civil conspiracy because they "entered into a partnership in which, among other things, IHC and Hard Rock combined, associated, agreed or acted in concert together and/or with others for the express purpose of injuring Plaintiff and other VIP founding members and Premier Level members, including but not limited to, by orchestrating a scheme to deprive Plaintiff and other VIP founding members and Premier Level members of the benefits and services due to them under the Membership Agreement" (*Id.*, ¶ 45).

**II.**

We address first IHC's argument that the Membership Agreement "makes clear that all disputes concerning the interpretation or execution of the contract are to be governed by the laws of Mexico and all legal actions arising out of the contract be decided by the courts and tribunal of the City of Cancun, Quintana Roo" (doc. # 25: IHC Mot. at 5). In other words, IHC contends that Mexico, not the Northern District of Illinois, is the proper -- indeed, the exclusive -- forum for plaintiff's claims against IHC and that Mexican law applies to this dispute.[2] Before examining the impact of the forum-selection clause, "we first must identify the law that governs [its] validity . . . ." *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 774 (7th Cir. 2014). Plaintiff disputes that the laws of Mexico govern this action, and argues that Illinois law should apply because IHC "made no argument" to the contrary (doc. # 41: Pl.'s Resp. to IHC's Mot. at 7).

"As a general rule, in diversity cases, we look to the substantive law of the state in which the district court sits, including choice of law rules." *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 774 (7th Cir. 2014) (internal quotations and citations omitted). However, the Supreme Court "has not yet decided the *Erie* issue of which law governs when, as here, a federal court, sitting in diversity, evaluates a forum selection clause in the absence of a controlling federal statute." *Id.* (internal quotations and citations omitted). Although "the majority of federal circuits hold that the enforceability of a forum selection clause implicates federal procedure and should therefore be governed by federal law," the Seventh Circuit has "taken a different approach." *Id.* In this circuit, "[i]n contracts containing a choice of law clause, . . . the law designated in the choice of law clause [is] used to determine the validity of the forum selection clause." *Id.* at 775 (citing *Abbott*

---

[2]We recognize that IHC's lead argument is that it was not the party which contracted with plaintiff, and that IHC's reliance on the forum-selection argument assumes (without conceding) that the contract is between plaintiff and IHC. Because we dismiss the claims against IHC based on *forum non conveniens*, we do not reach IHC's contention that it is not the party which contracted with plaintiff.

5

*Laboratories v. Takeda Pharmaceutical Co.*, 476 F.3d 421, 423 (7th Cir. 2007) ("[s]implicity argues for determining the validity and meaning of a forum selection clause, in a case in which interests other than those of the parties will not be significantly affected by the choice of which law is to control, by reference to the law of the jurisdiction whose law governs the rest of the contract in which the clause appears . . .").

In this case, the Membership Agreement states that it is "subject to the Federal Consumer Protection Act and to the Official Mexican Standard (NOM-029-SCFI-1998) published in the Federal Gazette on January 29, 1999" (Agreement, ¶ 9). However, the parties completely disregard either of these sources of Mexican law.[3] While IHC maintains that Mexican law applies, and plaintiff argues that Illinois law applies, both parties cite only to the federal law of the United States in their arguments on the forum-selection clause.

Although it is within our discretion to nevertheless attempt to determine Mexican law, it is well-settled that "choice of law issues may be waived or forfeited by declining to assert them in litigation." *Orgone Capital III, LLC v. Daubenspeck*, 912 F.3d 1039, 1044 (7th Cir. 2019). As each party cited only to the federal law of the United States in support of its choice of forum arguments, plaintiff and IHC have waived their arguments that Mexican or Illinois law should apply.

The Seventh Circuit's decision in *Adams v. Raintree Vacation Exchange, LLC*, 702 F.3d 436 (7th Cir. 2012), is directly on point. In *Adams*, the Seventh Circuit reviewed an agreement to

---

[3] The "Federal Consumer Protection Law" of Mexico is a 38-page English-language document whose purpose is "to promote and protect the rights and culture of consumers, and to seek fairness, assurance, and legal certainty in relations between suppliers and consumers." https://www.profeco.gob.mx/juridico/pdf/l_lfpc_06062006_ingles.pdf. The Official Mexican Standard (NOM-029-SCFI-1998) is a nine-page Spanish-language document titled "Norma Oficial Mexicana, Practicas Comerciales- Requisitos Informativos para la Comercializacion del Servicio de Tiempo Compartido." http://legismex.mty.itesm.mx/normas/scfi/scfi029.pdf. Although neither party attaches these laws to their briefs, we may take judicial notice of them. See Fed. R. Civ. P. 44.1 ("In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence").

purchase timeshare interests in a resort based in Mexico. The contract stated, as relevant here, that "in case of controversy on the interpretation and compliance with the rights and obligations of this Agreement, the parties hereby agree to submit themselves to the applicable laws and competent courts of the City of Mexico, Federal District, expressly waiving any other forum that may correspond to them by reason of their present or future domiciles." *Adams*, 702 F.3d at 438. The defendants sought dismissal based on that contractual provision, but neither side sought to apply Mexican law to interpret the forum-selection clause; instead, "their debate over its enforceability [wa]s framed entirely as a dispute about American law." *Id.* The Seventh Circuit held that "[b]y ignoring Mexican law and citing only federal cases in their briefs, the parties have disclaimed reliance on any distinctive features of Mexican law in interpreting their forum selection clause." *Id.* Thus, the appeals court held that the issue of the applicable law had been waived. *Id. See also Ward v. Soo Line R.R. Co.*, 901 F.3d 868, 880 (7th Cir. 2018) (finding choice of law issue was waived where both sides argued over the appropriate application of Indiana law, and neither side argued that Canadian law applied).

Similarly, the parties in this case have relied solely on United States federal law in their debate over both the choice of law and choice of forum clauses in the Membership Agreement. We therefore find that IHC has waived its argument that Mexican law applies, and plaintiff has waived his argument that Illinois law applies for purposes of IHC's motion to dismiss. Thus, we proceed, as the parties do, by applying United States federal law to determine the effect of the forum-selection clause in the Membership Agreement.

7

## III.

IHC argues that based on the forum-selection clause, plaintiff's lawsuit should be dismissed for improper venue under Rule 12(b)(3) (IHC Mot. at 5).[4] As stated above, the forum-selection clause in the Membership Agreement provides as follows:

> Jurisdiction -- The parties agree to submit to the jurisdiction of the courts and tribunals of the City of Cancun, Quintana Roo in the event of any controversy over the interpretation or execution of this Agreement, including Attachment "A", thereby renouncing any other jurisdiction that may correspond to them by reason of present or future domicile.

(Agreement, ¶ 10). Plaintiff advances several arguments to support his contention that this clause does not require him to bring his claims against IHC in Mexico. We conclude that none of those arguments have merit.

## A.

Initially, plaintiff argues that IHC's motion must be denied because it should have been brought on the basis of *forum non conveniens* or lack of personal jurisdiction, and not under Rule 12(b)(3) (doc. # 41: Pl.'s Resp. at 4). Indeed, the Supreme Court has held "a forum-selection clause does not render venue in a court . . . 'improper' within the meaning of . . . Rule 12(b)(3)." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 59 (2013). "Instead, the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Id.* at 60.

That said, IHC's mistake in bringing its motion pursuant to Rule 12(b)(3) is not fatal to its argument for dismissal. Although IHC "ha[s] not formally moved to dismiss based on *forum non conveniens*, the dismissal motion plainly invoked the forum-selection clause and asked th[is]

---

[4] We note that a court may rule on a "motion to dismiss for *forum non conveniens* before it first determines its own subject matter jurisdiction over an action." *Fischer v. Magyar Allamvasutak Zrt.*, 777 F.3d 847, 866 (7th Cir. 2015). In any event, while IHC has labeled lack of subject matter jurisdiction as one basis for dismissal, it has not identified in its briefing any basis for lack of subject matter jurisdiction, and we find none.

8

[C]ourt to enforce." *Mueller*, 880 F.3d at 894-95. Like the district court in *Mueller*, we treat IHC's motion "as, in substance, a *forum non conveniens* motion." *Id.* at 894. Thus, we reject plaintiff's argument that IHC has waived its forum-selection argument by attaching the wrong label to it.

In addition, to the extent plaintiff claims that Paragraph 10 of the Agreement is a forum-selection clause, we disagree. Plaintiff notes that Paragraph 10 does not use the word "venue," and he contends that the language "is at best ambiguous as to venue" (Pl.'s Resp. at 7). But, the absence of the word "venue" does not render ambiguous the meaning of Paragraph 10: it clearly is directed to choice of forum. The language in the Membership Agreement is similar to that in the forum-selection clause at issue in *Adams*, which did not use the word "venue" but stated that the parties to that contract "agree to submit themselves to the . . . competent courts of the City of Mexico, Federal District, expressly waiving any other forum that may correspond to them by reason of their present or future domiciles." *Adams*, 702 F.3d at 439. As in *Adams*, we find it unambiguous that the signatories to the Membership Agreement here chose Mexico as the forum in which to litigate any dispute over the contract.

### B.

Plaintiff next contends that IHC has "failed to carry its heavy burden" to show that the Northern District of Illinois is an inconvenient forum (Pl.'s Resp. at 4-6). The determination of whether dismissal is warranted on the basis of *forum non conveniens* "is committed to the sound discretion of the trial court." *Mueller*, 880 F.3d at 893.

Plaintiff's argument misstates both the law and the burden to be applied here. "In the typical case not involving a forum-selection clause," district courts evaluate motions to dismiss based on *forum non conveniens* by weighing both the convenience of the forum to the parties and witnesses (private interest considerations) and various public interest considerations. *Atlantic Marine*, 571

U.S. at 62-63. "The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum." *Id.* at 63 (internal quotations and citations omitted).

Where the contract contains a valid forum-selection clause, "the plaintiff's choice of forum merits no weight." *Atlantic Marine*, 571 U.S. at 63. Thus, a court

> should not consider arguments about the parties' private interests [because w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum.

*Id.* at 64. Moreover, as the party seeking to avoid a forum-selection clause, the plaintiff has the "burden of showing that public-interest factors overwhelmingly disfavor" dismissal for *forum non conveniens*. *Id.* at 67.

Applying the *Atlantic Marine* standard, we hold that the forum-selection clause in the Membership Agreement is valid, and that plaintiff has not established that public-interest considerations "overwhelmingly disfavor" dismissal.

### 1.

"[I]nternational forum-selection clauses are *prima facie* valid, especially when freely negotiated between private parties." *1st Source Bank v. Neto*, 861 F.3d 607, 612 (7th Cir. 2017). A party can challenge the enforcement of a forum-selection clause if its incorporation into the contract was the result of "fraud, undue influence or overweening bargaining power." *Id.* However, plaintiff does not challenge the validity of the Membership Agreement or the forum-selection clause within it. To the contrary, plaintiff alleges that the Agreement constitutes a valid and enforceable contract between him and IHC (Compl., ¶ 20).

Plaintiff states that "IHC has made no argument regarding the reasonableness or justness of compelling Mr. Pomerantz to prosecute his claim in Mexico," so "[t]here is no basis to find anything other than that enforcement of the contract, such that it compels proceeding in Mexico, is both unreasonable and unjust" (Pl.'s Resp. at 8). This contention -- that enforcing the forum-selection clause would be unreasonable and unjust simply because there is no evidence that it is not unreasonable and unjust -- is nonsensical. Plaintiff's argument attempts to avoid his burden of showing the clause should not be enforced. And, we note that the willingness of plaintiff (a lawyer) to agree to this provision at the time of contracting is itself proof that there is nothing unjust or unreasonable about the clause. Therefore, we find that Paragraph 10 of the Membership Agreement is a valid forum-selection clause.[5]

### 2.

Plaintiff's argument that "private and public interest factors" warrant overriding the forum-selection clause (Pl.'s Resp. at 6) is unpersuasive. To begin with, where, as here, there is a valid forum-selection clause, we "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Atlantic Marine*, 571 U.S. at 64. Thus, to overcome being consigned to the forum to which he agreed, plaintiff must show "public-interest factors overwhelmingly disfavor" dismissal. *Id.* at 67. That is a difficult burden to carry, as "those factors are 'rarely' strong enough to override the parties' preselected forum;" therefore, "'forum-selection clauses should control except in unusual cases.'" *Mueller*, 880 F.3d at 894 (quoting *Atlantic Marine*, 571 U.S. at 64).

---

[5]Plaintiff also fleetingly states that bringing his claim in Mexico "as a practical matter, is likely to be impossible" (Pl.'s Resp. to IHC at 8). As plaintiff cites nothing in support of this bald claim, we decline to address it. *See Riley v. City of Kokomo*, 909 F.3d 182, 190 (7th Cir. 2018) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority") (quoting *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016)).

11

This is not an unusual case. The Seventh Circuit has held that "[r]elevant public interest factors include the administrative difficulties stemming from court congestion; the local interest in having localized disputes decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Fischer v. Magyar Allamvasutak Zrt.*, 777 F.3d 847, 868 (7th Cir. 2015) (internal citations and quotations omitted). These factors do not "overwhelmingly disfavor" dismissal for *forum non conveniens*.

*First*, plaintiff contends that there is no issue of congestion in this District, but he does not provide any factual or legal support for this contention, and he improperly ignores issues of congestion, if any, in the pre-selected forum of Cancun, Mexico (Pl.'s Resp. at 6-7). *Second*, plaintiff contends that "there is an interest in having parties who do business in the United States and contract with citizens of the United States having their disputes heard in US Courts" (*Id.* at 7). However, not only does plaintiff again forgo factual and legal support for his contention, he also ignores Mexico's interest -- and, more particularly, Cancun's interest -- in having the dispute decided there, where the Agreement was executed and where the subject matter of the Agreement is based. *Third*, plaintiff argues that Mexican law does not apply, and thus, that there will be no issues with conflicts of laws or application of foreign law (*Id.*). However, as explained above, plaintiff and IHC have waived the choice of law argument for purposes of the instant motion. And, we do not know which law a Mexican court would apply in determining a dispute over the Membership Agreement. *Fourth*, plaintiff contends that "there is no unfair burden on citizens sitting as jurors in a case in the Northern District of Illinois involving a Cook County resident and businesses which did businesses in this District" (*Id.*). Plaintiff's argument again applies the wrong

standard and lacks factual and legal support. Indeed, it is this district, not Mexico, that appears to be the forum "unrelated" to the dispute over the Agreement: plaintiff signed the Membership Agreement in Mexico to obtain membership in resorts located in Mexico. Therefore, we find that plaintiff has not met his burden of showing that public interest factors overwhelmingly disfavor dismissal for *forum non conveniens*.

## C.

Plaintiff next contends that the forum-selection clause in the Agreement at most means that any dispute may be brought in Mexico, but "does not require that venue must be in Mexico" (Pl.'s Resp. at 7). Plaintiff cites *Hull 753 Corp. v. Elbe Flugzeugwerke GmbH*, 58 F. Supp. 2d 925, 927 (N.D. Ill. 1999), and *Paper Express, Ltd. v. Pfankuch Maschinen*, 972 F.2d 753, 757 (7th Cir. 1992), for the proposition that "where a contract refers only to jurisdiction . . . such a clause will generally not be enforced unless there is some further language indicating the parties' intent to make venue exclusive" (Pl.'s Resp. at 7, internal citations and quotations omitted).

However, Paragraph 10 contains "further language" indicating that Mexico would be the exclusive forum for disputes about the Membership Agreement. The parties to the Agreement not only "agree[d] to submit to the jurisdiction of the courts and tribunals of the City of Cancun, Quintana Roo in the event of any controversy over the interpretation or execution of this Agreement," they further "renounce[d] any other jurisdiction that may correspond to them by reason of present or future domicile" (Agreement, ¶ 10). This language mirrors that contained in the contract at issue in *Adams*, where the Seventh Circuit held that a clause stating the parties "agree[d] to submit themselves to the . . . competent courts of the City of Mexico . . . expressly waiving any other forum that may correspond to them by reason of their present or future domiciles" made Mexico "the exclusive forum irrespective of the parties' domiciles." *Adams*, 702

13

F.3d at 443. We find that the language of Paragraph 10 of the Membership Agreement shows the parties to the agreement intended Mexico to be the exclusive forum in which to litigate any dispute over the agreement.

## D.

Finally, plaintiff contends that IHC cannot seek to enforce the choice of forum clause in the Membership Agreement because IHC claims it is not a party to the Agreement (Pl.'s Resp. at 8). That argument is makeweight. IHC is free to offer alternative arguments in support of dismissal. And, as our foregoing discussion explains, plaintiff has not carried his burden of showing that he may disregard the forum selection clause to which he agreed. If plaintiff wishes to pursue a claim against the party with which he entered into the Membership Agreement, whether that was IHC or someone else, he must do so in Mexico.

Where, as here, the doctrine of *forum non conveniens* is successfully invoked, "the result is not a transfer to another court but a dismissal" of the action in this Court. *Deb*, 832 F.3d at 806. A dismissal based on *forum non conveniens* is without prejudice, "mean[ing] that although the dismissal is final [and appealable] in the sense that plaintiffs are finished before the U.S. courts, they still are free to refile the case in another, appropriate forum. . . ." *Hunt v. Moore Bros., Inc.*, 861 F.3d 655, 657 (7th Cir. 2017) (internal citations and quotations omitted).

## IV.

We now turn to the Hard Rock defendants, who contend that plaintiff's lawsuit against them for civil conspiracy should be dismissed under Rules 12(b)(2), 12(b)(6) and 9(b). For the reasons that follow, we dismiss plaintiff's claim of civil conspiracy for failure to state a claim under Rule 12(b)(6).

To survive a Rule 12(b)(6) motion to dismiss, "the complaint must contain sufficient factual information to 'state a claim to relief that is plausible on its face.'" *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] claim has facial plausibility when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Berkowitz*, 896 F.3d at 839 (quoting *Iqbal*, 556 U.S. at 678).

In the complaint, plaintiff alleges, based upon information and belief, that in or around 2012, IHC entered into an agreement whereby a number of the Original Palace Resorts would be re-branded as "Hard Rock Hotels," and managed in conjunction with the Hard Rock defendants (Compl., ¶ 12). Plaintiff contends that beginning with this agreement,

> and continuing through the present day, IHC and Hard Rock entered into a partnership in which, among other things, IHC and Hard Rock combined, associated, agreed or acted in concert together and/or with others for the express purpose of injuring Plaintiff and other VIP founding members and Premier Level members, including but not limited to by orchestrating a scheme to deprive Plaintiff and other VIP founding members and Premier Level members of the benefits and services due to them under the Membership Agreement.

(*Id.*, ¶ 45). Plaintiff contends that the Hard Rock defendants "acted intentionally, purposefully, without lawful justification, and with the express knowledge that they were injuring Plaintiff and other VIP founding members and Premier Level members," and that "[t]hese actions constitute a business conspiracy at common law" that caused plaintiff to suffer damage (*Id.*, ¶¶ 46-48).

In addition, in his brief in response to the Hard Rock defendants' motion to dismiss, plaintiff alleges further detail in relation to the conspiracy count: (1) some of the hotels identified in the Membership Agreement as Palace Resorts, Inc., were rebranded as Hard Rock Hotels; (2)

these Hard Rock hotels are owned and operated by an affiliate of Palace Resorts, Inc., by means of licensing agreements from Hard Rock; (3) Palace Resorts, Inc., acts as the sales and marketing arm for these hotels; (4) Rafael Chapur, the Chief Operating Officer of Palace Resorts, Inc., stated on or about January 26, 2012 that "Hard Rock International and Palace Resorts joined together to form a business partnership and create[d] the world[']s first all inclusive Hard Rock Hotel in the Dominican Republic . . .;" (5) on or about August 6, 2012, Mr. Chapur stated that he was "proud to present Hard Rock Hotel Cancun and Hard Rock Hotel Vallarta as Mexico's first Hard Rock Hotels;" (6) Michael Schindler, Hard Rock's Executive Vice President, has stated with regard to Palace Resorts rebranded as Hard Rock hotels that "[p]artnering with the All Inclusive Collection has been such a rewarding experience, allowing us to bring the unique and differentiating Hard Rock style to both of these great properties;" and (7) based on the forgoing, Palace Resorts, Inc. would have had to "identify its contractual commitments owed to members such as Mr. Pomerantz to Defendant Hard Rock" (doc. # 45: Pl.'s Resp. to Hard Rock's Mot. to Dismiss at 7-8).[6]

"Under Illinois tort law, a civil conspiracy requires '(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff.'" *Turner v. Hirschbach Motor Lines*, 854 F.3d 926, 930 (7th Cir. 2017) (quoting *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 509 (7th Cir. 2007)). "A defendant who innocently performs an act which happens to fortuitously further the tortious purpose of another is not liable under the theory of civil conspiracy." *Turner*, 854 F.3d at 930 (quoting *Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894 (Ill. 1994)).

---

[6] "[F]acts alleged by a plaintiff in a brief in opposition to a motion to dismiss may be considered when evaluating the sufficiency of a complaint so long as they are consistent of the allegations in the complaint." *Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015) (internal citations and quotations omitted).

In his brief in response to the Hard Rock defendants' motion to dismiss, plaintiff contends that his allegations satisfy the tortious act element of a civil conspiracy because "IHC breached its contract with Mr. Pomerantz, an Illinois resident, in furtherance of the conspiracy" to rebrand resort hotels covered by the Membership Agreement and to deprive plaintiff and others of access to and benefits at these properties (Pl.'s Resp. to Hard Rock at 8). Plaintiff argues that "breaches of the Membership Agreement harmed" him and constitute "overt acts taken pursuant to the conspiracy" to deprive him of the benefits and services due him under the Agreement (*Id.* at 11).

Plaintiff's reliance on IHC's alleged breach of contract to provide the requisite underlying conduct for a civil conspiracy is misplaced. The Illinois Supreme Court has explained that "[a] cause of action for civil conspiracy exists only if one of the parties to the agreement commits some act in furtherance of the agreement, which is itself a tort." *Adcock*, 645 N.E.2d at 894. However, "[b]reach of contract is not a tort." *Hassebrock v. Ceja Corp.*, 29 N.E.3d 412, 421 (Ill. App. 2015). As such, IHC's alleged breach of contract -- that is, breach of the Membership Agreement -- does not constitute a tortious act. *See Bressner v. Ambroziak*, 379 F.3d 478, 483 (7th Cir. 2004) (holding that the plaintiff had not alleged the necessary tortious or unlawful overt act to sustain a claim of civil conspiracy under Illinois law because the overt acts he alleged were the completion of loan applications, and the applications "were not tortious or unlawful"). *See also Adams v. Pull'R Holding Co., LLC*, No. 09-7170, 2010 WL 1611078, at *2 (N.D. Ill. Apr. 20, 2010) (holding that the plaintiff's allegations failed to state a cause of action for civil conspiracy because "[a]lthough plaintiff has alleged that defendants engaged in a 'lawful act in an unlawful manner,' he ha[d] failed to allege an underlying tortious act to support this allegation").

We thus dismiss plaintiff's claim for civil conspiracy. This dismissal is without prejudice. If plaintiff seeks to amend his complaint, he should be mindful of two additional issues. *First*, the

Court is not ruling here on the Hard Rock defendants' motion to dismiss for lack of personal jurisdiction. The parties have raised multiple disputes over material facts on this issue, and ruling on the pleadings at this point would be premature. *Second*, although the Hard Rock defendants did not raise the issue of the forum-selection clause in their motion to dismiss, it is an issue worthy of the parties' consideration if there is an attempt to replead. *See Adams*, 702 F.3d at 443 (noting that "because Raintree was entitled to remove the case to Mexico under the forum selection clause . . ., the doctrine of *forum non conveniens* clicks in and would require the dismissal of the claim against Starwood as well, even if it weren't entitled to enforce the forum selection clause. . . . For with half the case to be tried in a Mexican court, it would be very *non conveniens* to try the other half in Chicago").

## CONCLUSION

For the foregoing reasons, the Court grants IHC's motion to dismiss based on *forum non conveniens* (doc. # 25) and grants, without prejudice, the Hard Rock defendants' motion to dismiss for failure to state a claim under Rule 12(b)(6) (doc. # 23). If plaintiff wishes to file a second amended complaint, he shall file a motion seeking leave to do so by February 27, 2019.

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

DATE: February 6, 2019

18