## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

MICHAEL S. POMERANTZ.,

      Plaintiff,

      v.

HARD ROCK CAFÉ FRANCHISE GROUP,
  LLC, ET AL.,

      Defendants.

No. 18 CV 5470

Magistrate Judge McShain

## Memorandum Opinion and Order

Plaintiff Michael Pomerantz entered into a timeshare contract with International Hotel Company, LLC (IHC) that entitled him to certain benefits at a group of hotels in Mexico. After IHC turned over the management of the hotels to defendants Hard Rock Café Franchise Group, LLC and Hard Rock Café International (USA), Inc. (collectively Hard Rock), Hard Rock allegedly denied Pomerantz many of these benefits and forced him to pay more money for services that were already included in the contract. Pomerantz sued Hard Rock for tortious interference with contract, fraud, and civil conspiracy. Pending is Hard Rock's motion to dismiss under the doctrine of *forum non conveniens*, for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), and for failure to state a claim under Fed. R. Civ. P. 12(b)(6). [104].[1]

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings.

For the following reasons, the motion is granted and the case is dismissed on *forum non conveniens* grounds.

## Background

In 2009, Pomerantz executed a "Membership Agreement" with an entity called Palace Premier, S.A. de C.V., which allegedly does business under the name IHC. [94] 1 at ¶ 2. Pomerantz paid a membership fee in exchange for "a 25-year membership entitling him to stay at fourteen Mexican resorts[.]" *Pomerantz v. Int'l Hotel Co., LLC*, 359 F. Supp. 3d 570, 576 (N.D. Ill. 2019). The Membership Agreement also entitled Pomerantz to: 1) spend 200 "Premier Weeks" at the hotels; 2) "VIP founding member" privileges – the highest, most exclusive membership tier – at the hotels; and 3) other miscellaneous benefits. Pomerantz availed himself of the contract benefits without issue from 2009 through 2011. [94] 1 at ¶ 2, 2 at ¶ 1. The Membership Agreement also contained a "jurisdiction" clause, which states that "[t]he parties agree to submit to the jurisdiction of the courts and tribunals of the City of Cancun, Quintana Roo, in the event of any controversy over the interpretation or execution of this Agreement[.]" [94] 4 at ¶ 4.

Pomerantz alleges that, in October 2011, IHC entered into a licensing and management agreement with Hard Rock. Under this agreement, some of the hotels covered by the timeshare agreement were rebranded as Hard Rock hotels, and Hard Rock obtained "ultimate management/control" of these hotels. [*Id.*] 4 at ¶ 13. Hard Rock "maintained a significant amount of control over the operations of the re-

2

branded 'Hard Rock Hotels,'" and required that they be operated according to Hard Rock's procedures, standards, and systems. [*Id.*] 4 at ¶ 14.

After the licensing and management agreement was executed, Pomerantz claims, "many of the membership rights of VIP founding members" and Premier Level members were disallowed, the Membership Agreement's "Preferential Rate" was increased beyond the rate permitted by the contract, and a new membership tier was created above the VIP Founding membership, with "rights and privileges greater than the VIP and Premier Levels, in violation of the Membership Agreement." [*Id.*] 2 at ¶ 3.

In March 2018, Pomerantz sued IHC and Hard Rock in the Circuit Court of Cook County. IHC removed the case to this Court on the basis of diversity jurisdiction.[2] [1]. IHC then filed a motion to dismiss under Civil Rule 12(b)(1), (3) and

---

[2] Pomerantz's second amended complaint did not adequately allege that complete diversity existed between the parties when this case was removed from state court. It failed to allege Pomerantz's domicile, it did not identify the members of Hard Rock Cafe Franchise Group, LLC or the citizenship of those members, and it did not identify Hard Rock Cafe International's state of incorporation or principal place of business. [96]. Although the Court found that other materials in the record supplied some of this information [7, 21], the Court directed the parties to file a joint jurisdictional statement supplying the three pieces of information missing from the second amended complaint, as well as the citizenship of all members of IHC. [96]. The parties' joint jurisdictional statement once again failed to identify plaintiff's domicile, and it did not identify the citizenship of the members of IHC. Regarding the latter omission, the Court had explained that, while IHC was "no longer a defendant in this case, the existence of complete diversity is measured at the time of removal" and thus the Court needed to know the citizenship of IHC's members. [102]. The Court therefore ordered the parties to file an amended jurisdictional statement to cure the two omissions. Although that statement finally identified plaintiff's domicile, the parties claimed to be unable to determine the citizenship of IHC's members–notwithstanding that IHC's counsel's name and contact information is listed on the docket. [103] 2. The parties then pointed the Court to a statement in IHC's notice of removal that IHC's "sole manager" is "a resident" of Florida. [*Id.*] (citing [1] 2). But it was the doubly problematic nature of that statement–which wrongly assumed that IHC's citizenship turns on the citizenship of an undefined "manager" position rather than on the citizenship of its members, and that an individual's citizenship turns

(6), while Hard Rock moved to dismiss under Civil Rules 9(b) and 12(b)(2) and (6). In an earlier decision, the Court granted IHC's motion on the basis of *forum non conveniens* and Hard Rock's motion for failure to state a claim on which relief may be granted. [54]; *Pomerantz*, 359 F. Supp. 3d 570. As to IHC's motion, the Court found that the Membership Agreement's forum selection clause was valid, and that it required Pomerantz to litigate his claims against IHC in Cancun, Mexico. *Pomerantz*, 359 F. Supp. 3d at 580, 581-83. Regarding Hard Rock's motion, the Court found that Pomerantz had not plausibly alleged that Hard Rock was engaged in a civil conspiracy with IHC because he failed to allege a tortious act in furtherance of the alleged conspiracy. *Id.* at 584. Although the dismissal of the claims against Hard Rock was without prejudice to filing an amended complaint, the Court advised Pomerantz to "be mindful of two additional issues" should he try to replead:

> *First*, the Court is not ruling here on the Hard Rock defendants' motion to dismiss for lack of personal jurisdiction. The parties have raised multiple disputes over material facts on this issue, and ruling on the pleadings at this point would be premature. *Second*, although the Hard Rock defendants did not raise the issue of the forum-selection clause in

---

on his residence rather than his domicile–that prompted the Court to ask the parties to correct the jurisdictional record in the first place. Despite the parties' inability or unwillingness to ensure that the Court has subject matter jurisdiction to adjudicate their dispute, the Court finds that it has diversity jurisdiction over this case. Plaintiff is an Illinois citizen, and the Hard Rock defendants are Florida citizens. [103] 2. The citizenship of IHC is unknown, but even assuming that IHC were an Illinois citizen (such that complete diversity would not have existed at the time of removal), the Court's subsequent dismissal of IHC as a party to this case cured the lack of complete diversity. *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 73 (1996) ("The *jurisdictional* defect was cured, *i.e.*, complete diversity was established before the trial commenced" when district court dismissed non-diverse defendant and case became "a two-party lawsuit" between citizens of different states) (emphasis in original); *Wire v. Hussman*, No. 03 C 5389, 2004 WL 723845, *3-4 (N.D. Ill. March 31, 2004) ("The principle . . . is that the jurisdictional defect of the absence of complete diversity at the time the complaint is filed is cured by the dismissal of the nondiverse party[.]"); *see also Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 572-74 (2004).

their motion to dismiss, it is an issue worthy of the parties' consideration if there is an attempt to replead.

*Pomerantz*, 359 F. Supp. 3d at 585.

Pomerantz filed his second amended complaint in May 2020.[3] [94]. Count one is a claim for tortious interference with contract. [*Id.*] 7-8. Pomerantz alleges that Hard Rock "intentionally and unjustifiably interfered with the Membership Agreement by improperly limiting the benefits available to [p]laintiff under that agreement," and that this interference "caused IHC to breach its obligations under" the Membership Agreement. [*Id.*] 7 at ¶¶ 4-5, 8 at ¶ 2.

Counts two and three are claims for common law fraud and consumer fraud under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 5/501, *et seq.* [94] 8-11. For the former claim, Pomerantz alleges that Hard Rock failed to "disclose the 2011 change in management of the Hotel Properties and [its] knowledge that [it] did not intend to honor the Membership Agreement as written[.]" [*Id.*] 8 at ¶ 5. "In reliance that nothing had changed under the Membership Agreement," Pomerantz continues, he made reservations at the covered hotels only to discover that "the Membership Agreement was not honored at all in certain instances" and that he "was charged additional monies for the exact same services that were included in the Membership Agreement." [*Id.*] 9 at ¶¶ 1-2. For the latter claim, Pomerantz maintains that Hard Rock concealed its intention not "to honor the

---

[3] Pomerantz stated in his opposition to the pending motion to dismiss that he has not refiled his claims against IHC in Mexico. [111] 3.

Membership Agreement as written" in order to induce consumers like him "to continue booking trips to the Hotel Properties." [*Id.*] 8 at ¶ 5, 10 at ¶ 6.

Count four is a civil conspiracy claim. [94] 11-12. Pomerantz alleges that Hard Rock and IHC "acted in concert . . . for the express purpose of injuring [him]" by scheming "to deprive [him] and other VIP founding members and Premier Level members of the benefits and services due to them under the Membership Agreement." [*Id.*] 11 at ¶ 4.

Hard Rock's motion to dismiss raises three issues, but because the Court finds that dismissal is required by the *forum non conveniens* doctrine, the Court does not reach Hard Rock's arguments concerning personal jurisdiction or the plausibility of Pomerantz's claims.

## Legal Standard

Federal courts evaluate motions to enforce forum selection clauses that designate international forums under the *forum non conveniens* doctrine. *See Atl. Marine Const. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 60 (2012).

Before enforcing a forum selection clause, "the Court must determine its validity and scope." *Robrinzine v. Big Lots Stores, Inc.*, No. 15-cv-7239, 2016 WL 3459733, *4 (N.D. Ill. June 24, 2016). Here, however, Pomerantz does not challenge the validity of the forum selection clause. [111] 1-15.[4] Rather, he challenges only the scope of the clause – that is, whether the clause applies to his claims – and Hard

---

[4] In any event, the Court notes its earlier determination in this case that the clause was valid and that Pomerantz "has not established that public-interest considerations 'overwhelmingly disfavor' dismissal." *Pomerantz*, 359 F. Supp. 3d at 580.

Rock's ability, as a non-party to the Membership Agreement, to enforce it. [*Id.*] 3, 5-7.

"Determining whether the forum selection clause applies to this suit requires interpreting the clause under 'the law designated in the [Membership Agreement's] choice of law clause.'" *Brady v. Sperian Energy Corp.*, 18 C 6968, 2019 WL 2141968, *2 (N.D. Ill. May 16, 2019) (quoting *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 775 (7th Cir. 2014)). Although the Membership Agreement states that it is to be governed by Mexican law [94-1] 4 at ¶ 3, the parties base their arguments on either federal law (Hard Rock) or no body of law (Pomerantz). Accordingly, as was true of the Court's handling of the forum-selection-clause issues posed by IHC's motion to dismiss, *see Pomerantz*, 359 F. Supp. 3d at 578-79, the Court again finds that the parties have forfeited any argument that Mexican or Illinois law applies, and the Court will construe the clause using only federal law.

## Discussion

### A. Pomerantz's Claims Are Subject to the Forum Selection Clause Because They Present a Controversy Over the Execution of the Agreement

Hard Rock contends that Pomerantz's claims "must be dismissed pursuant to the doctrine of *forum non conveniens* due to the valid forum-selection clause contained in the Membership Agreement, under which all claims arising out of the agreement must be brought in Mexico." [104] 5-6. In response, Pomerantz argues that the forum selection clause does not apply because "there is no cause of action for breach of contract alleged in Plaintiff's Second Amended Complaint." [111] 3. In its reply brief, Hard Rock maintains that the forum selection clause is indeed applicable to

Pomerantz's claims. It cites the Seventh Circuit's decision in *Adams v. Raintree Vacation Exch., LLC*, 702 F.3d 436, 442 (7th Cir. 2012), for the proposition that a forum selection clause can "encompass tort suits that arise out of [a] contract." Pointing to the central role that the Membership Agreement plays in Pomerantz's claims, Hard Rock argues that "[t]his is clearly a controversy over the execution of the Agreement" [112] 3, thereby triggering the forum selection clause.

I agree with Hard Rock and conclude that Pomerantz's tort and statutory claims present a "controversy over . . . the execution of the Agreement" and are therefore subject to the forum selection clause.

Pomerantz's only response to Hard Rock's arguments about the scope of the forum selection clause is that the clause does not apply because he has brought "no contractual claims against [Hard Rock] whatsoever." [111] 6. But contrary to Pomerantz's argument, courts have long recognized that "forum selection clauses can be equally applicable to contractual and tort causes of action." *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988).

"Courts construe forum selection clauses broadly. Indeed, they can cover claims in addition to a breach of the contract in which they are contained." *Prof'l LED Lighting, Ltd. v. Aadyn Tech., LLC*, No. 14-cv-2440, 2014 WL 6613012, *6 (N.D. Ill. Nov. 21, 2014). "When a dispute is fundamentally related to a contractual agreement, the terms of the contract – including a forum selection clause – govern the dispute, even if the plaintiff brings claims sounding in tort rather than contract law." *Valley Forge Ins. Co. v. Hartford Iron & Metal, Inc.*, No. 1:14-CV-6-RLM-SLC, 2016 WL

2755462, *2 (N.D. Ind. May 12, 2016). This is so, the Seventh Circuit has explained, because "a dispute over a contract does not cease to be such merely because instead of charging breach of contract the plaintiff charges a fraudulent breach, or fraudulent inducement, or fraudulent performance." *Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd.*, 364 F.3d 884, 889 (7th Cir. 2004); *see also Crescent Int'l, Inc. v. Avatar Cmtys, Inc.*, 857 F.2d 943, 944 (3d Cir. 1988) ("pleading non-contractual theories is not enough to avoid a forum selection clause if the claims asserted arise out of the contractual relation and implicate the contract's terms").

To decide whether a forum selection clause applies to a tort or other non-contractual claim, the Court must consider the language of the clause and the allegations supporting plaintiff's claims. In general, courts have held that "contract-related tort claims involving the same operative facts as a parallel claim for breach of contract should be heard in the forum selected by the contracting parties." *Lambert v. Kysar*, 983 F.2d 1110, 1121-22 (1st Cir. 1993); *accord Prof'l LED Lighting*, 2014 WL 6613012 at *6 (holding that plaintiff's fraud and conspiracy claims were subject to forum selection clause because all were "rooted in the same facts surrounding the contractual allegations").

A review of Pomerantz's complaint demonstrates that each of his claims is "fundamentally related to," *Valley Forge*, 2016 WL 2755462 at *2, the Membership Agreement and "rooted in," *Prof'l LED Lighting*, 2014 WL 6613012 at *6, the rights and obligations created by that contract.

9

In his tortious interference claim, Pomerantz alleges that Hard Rock "disallow[ed] many of the membership rights of VIP founding members," improperly "increas[ed] the 'Preferential Rates' under the Membership Agreement," and "creat[ed] a new, exclusive membership level above the VIP founding membership . . . in violation of the Membership Agreement[.]" [94] 7-8. Similarly, Pomerantz's common law fraud claim alleges that, "as a result of [d]efendants' new control over the Hotel Properties the Membership Agreement was not honored at all in certain instances[.]" [*Id.*] 9 at ¶ 2. Moreover, the premise of the statutory consumer fraud claim is that "[d]efendants committed deceptive acts or unfair practices including, but not limited to their failure to disclose 2011 change in management of the Hotel Properties and that they did not intend to honor the Membership Agreement as written." [*Id.*] 10 at ¶ 5. Finally, the alleged object of the conspiracy was "to deprive [Pomerantz] and other[s] . . . of the benefits and services due to them under the Membership Agreement." [*Id.*] 11 at ¶ 4.

Given these allegations, as well Pomerantz's further contention that "[d]efendants intentionally and unjustifiably interfered with the Membership Agreement" [*id.*] 7 at ¶ 5, the Court finds that Pomerantz's claims present a "controversy over the . . . execution" of the Membership Agreement. Each claim concerns the alleged denial of or interference with Pomerantz's rights as defined by the Membership Agreement, and, by this suit against Hard Rock, Pomerantz seeks damages for alleged violations of contractual obligations created by the Membership Agreement. For that reason, the Court finds that the parties are in controversy over

the "execution of this Agreement," and that this suit "is fundamentally related to [the] contractual agreement" between Pomerantz and IHC. *Valley Forge*, 2016 WL 2755462 at *2.

The Court's conclusion here is similar to the Seventh Circuit's conclusion in *Adams*. Plaintiffs in that case bought a timeshare in a resort in Mexico, and the operative contract contained a forum selection clause providing that any "case or controversy on the interpretation and compliance with the rights and obligations of this Agreement" must be heard in the courts of Mexico. *Adams*, 702 F.3d at 438. Plaintiffs alleged that defendants "defrauded them by 'pretend[ing] to have a Mexican subsidiary (DTR) take in money [to construct the villas in which the plaintiffs thought they were purchasing an interest] that would never be built.'" *Id*. The Seventh Circuit held that this fraud claim was subject to the forum selection clause because the clause was "broad enough to encompass tort suits that arise out of the contract." *Adams*, 702 F.3d at 444.

Like the fraud claim in *Adams*, Pomerantz's claims here all allege that a non-party to the Membership Agreement wrongly or fraudulently denied Pomerantz the benefits to which he was entitled under the contract. And like the forum selection clause in *Adams* that applied to any controversy on "compliance with the rights and obligations of" that contract – which is to say the execution of that agreement – the forum selection clause here – "any controversy over the interpretation or execution of this Agreement" – is broad enough to encompass tort and statutory claims that are rooted in and fundamentally related to the Membership Agreement.

11

For these reasons, the Court holds that Pomerantz's tort and statutory claims are subject to the Membership Agreement's forum selection clause.

### B. Hard Rock Is Entitled to Enforce the Forum Selection Clause Because Hard Rock Is Closely Related to the Subject Matter of the Membership Agreement and the Agreement's Execution.

The parties also dispute whether Hard Rock, which was not a party to the Membership Agreement, is entitled to enforce the forum selection clause. Each side's argument invokes the Seventh Circuit's decision in *Adams v. Raintree*.

Hard Rock argues it can enforce the clause because Pomerantz alleges a conspiracy between IHC and Hard Rock to deny him his rights under the Membership Agreement. [104] 7. In support, Hard Rock relies on *Adams*'s holding that a non-party defendant was entitled to enforce a forum selection clause because it was an alleged co-conspirator with a party to the contract:

> All [defendant] is doing in invoking the forum selection clause to which it is not a party is accepting one of the premises of the plaintiff's suit— that [the ownership group is] indeed simply [a] cat's paw of [defendant]—and pointing out that the implication is that the [timeshare] contracts, including the forum selection clause, are really between the plaintiffs and [defendant].

*Adams*, 702 F.3d at 443.

For his part, Pomerantz contends that *Adams* shows why Hard Rock cannot enforce the forum selection clause. Pomerantz focuses on the Seventh Circuit's alternative holding that a different non-party defendant was entitled to enforce the clause because it was the alleged corporate parent of one party to the contract. [111] 6-7; *Adams*, 702 F.3d at 442. Unlike in *Adams*, Pomerantz argues, Hard Rock has "not taken ownership of the Hard Rock Hotels," and does not claim "any affiliation or

12

common ownership with the party with whom Plaintiff contracted." [111] 6-7. In the absence of such an ownership link, Pomerantz concludes, allowing Hard Rock to enforce the forum selection clause is "unsupported by case law." [*Id.*] 6-7. Pomerantz does not respond, however, to Hard Rock's argument based on the allegation that Hard Rock is an alleged co-conspirator with IHC. [*Id.*] 5-7.

The Court rejects Pomerantz's arguments and holds that Hard Rock is entitled to enforce the forum selection clause.

In the Seventh Circuit, a court decides whether a non-party may enforce a contractual forum selection clause by asking whether the non-party is so "'closely related' to the dispute that it becomes 'foreseeable' that it will be bound." *Hugel v. Corporation of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993).

Acknowledging that the "closely related" test "is a 'vague standard,'" the Seventh Circuit has "noted that 'it can be decomposed into two reasonably precise principles': 'affiliation' and 'mutuality,'" either of which is sufficient to allow a nonparty to invoke a forum selection clause." *Stifel, Nicolaus & Co. v. Lac du Flambeau Band of Lake Superior Chippewa Indians*, 807 F.3d 184, 212 (7th Cir. 2015) (quoting *Adams*, 702 F.3d at 439). In *Adams*, the Seventh Circuit explained that "affiliation" exists when a nonparty is "under common ownership (for example as parent and subsidiary) with—that is, an affiliate of—a party to a contract containing the clause." *Adams*, 702 F.3d at 439-40. The principle of mutuality, *Adams* explained, applies when a nonparty is alleged to be a "co-conspirator" or "secret principal" with the party bound by the forum selection clause. *Id*. at 442.

Applying *Adams* here, the Court finds that Hard Rock is entitled to enforce the forum selection clause under the mutuality principle. According to Pomerantz's complaint:

> IHC and [Hard Rock] entered into a partnership in which . . . IHC and [d]efendants combined, associated, agreed or acted in concert together . . . for the express purpose of injuring Plaintiff . . . by orchestrating a scheme to deprive Plaintiff . . . of the benefits and services due to [him] under the Membership Agreement.

[94] 11 at ¶ 4.

Taken as true, this allegation establishes that IHC and Hard Rock were co-conspirators in a scheme to deprive Pomerantz of his rights under the Membership Agreement, and it is alone sufficient under *Adams* to hold that Hard Rock can enforce the forum-selection clause. *See Adams*, 702 F.3d at 442-43; *accord Wilson v. 5 Choices, LLC*, 776 F. App'x 320, 329 n.7 (6th Cir. 2019) (holding that non-party defendants alleged to be co-conspirators with party to contract were entitled to enforce forum selection clause and observing that "[t]his Court need not decide whether all Defendants indeed were in a conspiracy or otherwise affiliated; it is enough that Plaintiffs' complaint alleges that this was the case").

Moreover, the complaint's allegations demonstrate that Hard Rock's conduct respecting Pomerantz's rights under the Membership Agreement is "closely related" to–indeed, it is inseparable from and forms the basis for–this suit. The core of Pomerantz's dispute with Hard Rock is that, by its actions after taking over the management of the hotels covered by the Membership Agreement, Hard Rock deprived Pomerantz of the rights and benefits to which he is entitled under the

contract. Indeed, Pomerantz alleges that Hard Rock "improperly limit[ed] the benefits available to [p]laintiff under [the Membership A]greement," [94] 7 at ¶ 6, and that, because of "[d]efendants' new control over the Hotel Properties[,] the Membership Agreement was not honored at all in certain instances." [*Id.*] 9 at ¶ 2. All of this provides an ample basis for the Court's finding that Hard Rock is "closely related" to the suit and can enforce the forum selection clause.

Finally, Pomerantz's argument that Hard Rock cannot enforce the clause because it is not the owner of the hotels at issue does not require a different result. This argument focuses on the affiliation principle discussed in *Adams*, but Hard Rock's argument that it should be able to enforce the clause as an alleged co-conspirator–which Pomerantz has ignored–invokes the "mutuality" principle. *See Adams*, 702 F.3d at 442 ("[Starwood defendant] can invoke the forum selection clause on a different ground from that of affiliation: mutuality. . . where the suit accuses Raintree and Starwood of being secret principals of DTR, their agent in dealing with the timeshare buyers and thus in executing the fraud").[5]

For these reasons, the Court holds that Hard Rock is entitled to enforce the forum selection clause of the Membership Agreement.

---

[5] In *Stifel*, the Seventh Circuit "expressly indicated that the concept of 'affiliation' and 'mutuality' may not be as narrow as described in *Adams*, and that those 'situations simply represent[ed] the factual scenarios in which we have been called upon to apply' them." *Shanghai Daisy, LLC v. PositivEnergy, Inc.*, No. 19 C 5901, 2020 WL 4365883, *3 n.3 (N.D. Ill. July 30, 2020). Accordingly, the absence of an ownership link between IHC and Hard Rock would not necessarily preclude Hard Rock from enforcing the forum selection clause on affiliation grounds. Because the Court finds that enforcement is proper under the mutuality principle, the Court need not address Pomerantz's affiliation argument any further.

## Conclusion

Hard Rock's motion to dismiss based on *forum non conveniens* [104] is granted.

_____

**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: November 3, 2020**